IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 09-50073-TUC-JMR(HCE) |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| Edna Edith Araiza, | ) | |
| Defendant. | ) | |

On November 30, 2009, upon consent of Defendant Edna Edith Araiza, this matter came on for evidentiary hearing on a Petition to Revoke Supervised Release (Doc. No. 4) (hereinafter "Pet., Alleg. _ at p. _"). Probation Officer Ms. Arlene Verdugo and Defendant Edna Edith Araiza testified. Three exhibits were introduced into evidence: (1) a judgment and commitment order from the District of Nebraska (Government Exhibit 1, hereinafter "Gov., Exh. 1 at p. _"); (2) form 7A conditions of supervised release (Government Exhibit 2, hereinafter "Gov., Exh. 2 at p. _"); (3) Implementation Of Terms Of Supervision

(Government Exhibit 3, hereinafter "Gov., Exh. 3 at p. _"). A transcript was ordered and received[1] by the Magistrate Judge and is forwarded to the District Court for review.

After consideration of the evidence presented, exhibits admitted into evidence, and argument of respective counsel, the Magistrate Judge recommends that the District Court find that the Defendant violated her conditions of supervised release.

# I. DISCUSSION

## A. Conditions Imposed in The District of Nebraska

On April 8, 2008, Defendant Edna Edith Araiza (hereinafter "Defendant") pled guilty in the District of Nebraska to Possession With Intent To Distribute Marijuana, Count 1 of an indictment, on April 8, 2008. (Gov. Exh. 1 at p.1). On March 27, 2009, Defendant was sentenced in the United States District Court for the District of Nebraska by District Judge Richard G. Kopf. (*Id.*). Defendant was ordered committed to the custody of the United States Bureau of Prisons for a term of Time Served. (*Id.* at p. 2). Defendant was placed on supervised release for a term of five years to begin on March 27, 2009. (*Id.* at p. 3). Defendant was ordered to report to the probation office in the district to which she was released, within 72 hours of release from the custody of the Bureau of Prisons. (*Id.*). Defendant was ordered to comply with standard conditions of release adopted by the United States District Court for the District of Nebraska. (*Id.*). Those standard conditions of supervised release pertinent to the instant Petition to Revoke Supervised Release are:

...

2. The defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3. The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
   ...
5. The defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

---

[1] The transcript of the November 30, 2009 Petition to Revoke Supervised Release evidentiary hearing was filed on December 17, 2009 (Doc. No. 14).

- 2 -

1   6.   The defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
    **...**

(*Id.* at p. 3).

Defendant was ordered to comply with special conditions of supervised release. The special condition of supervised release pertinent to the Petition to Revoke Supervised Release is:

**...**

2.   The defendant shall participate in the home confinement program for a period of six months that may be subject to electronic monitoring or not be subject to electronic monitoring at the discretion of the probation officer. And if there is electronic monitoring, the defendant will not be required to pay for the electronic monitoring. Home confinement shall commence according to a schedule arranged by the home confinement specialist. The defendant shall comply with the provisions of the Home Confinement Participant Agreement.

**...**

(*Id.* at p. 4).

### B. District of Arizona Conditions and Factual Allegations

A Transfer of Jurisdiction to the District of Arizona was accepted on April 23, 2009 and assigned to the Honorable Chief Judge John M. Roll. (Pet., at p. 1). On September 11, 2009 the District Court ordered that a summons issue for Defendant based on probable cause to believe Defendant had violated her conditions of supervision. (Pet., at p. 3). Ms. Arlene Verdugo of the United States Probation Office was assigned to supervise Defendant and she met with Defendant toward the end of March-early April of 2009. (Arlene Verdugo Testimony, November 30, 2009 at p. 5 (hereinafter "Verdugo, at p. _")). On April 2, 2009 Ms. Verdugo (hereinafter "Probation Officer") reviewed form 7A outlining Defendant's conditions of supervision in the District of Arizona along with special conditions imposed at sentencing.(*Id.* at p. 6; Gov., Exh. 2). Defendant signed the form and was provided a copy of same. (Verdugo, at p. 6). Therein are enumerated standard conditions of release:

**...**
(3)   You shall report to the Probation Office as directed by the Court or probation officer, and shall submit a truthful and complete written report within the first five days of each month.

(4) You shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.
...
(6) You shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.
(7) You shall notify the probation officer at least ten days prior to any change of residence or employment.
...

(Gov. Exh. 2 at p. 1). Defendant agrees that she met with the Probation Officer on either April 2 or 4, 2009. (Edna Araiza Testimony at p. 39 (hereinafter "Araiza, at p. _")). Form 7A also outlines Defendant's special condition:

The special conditions ordered by the Court are as follows:
...
3. You shall participate in a Home Confinement Program with electronic monitoring under the sanction of detention for a period of 180 days. You shall contribute to the cost of electronic monitoring in an amount to be determined by the probation officer.
...

(Gov., Exh. 2 at p. 2).

On June 5, 2009 Defendant and Probation Officer both signed an Implementation Of Terms Of Supervision form. Defendant was instructed by the Probation Officer to participate in verifiable job searches and provide a list of the locations/employers/businesses where she had submitted applications and provide such every Monday between the hours of 10:00 a.m. and 3:00 p.m., beginning June 8, 2009. (Gov. Exh. 3). The list is to include the name of the business; address of the business; person spoken to and to whom the application was submitted; and date/time Defendant was at the business when submitting the application. (*Id.*). Defendant, per the form, was instructed to continue this process until further notice. (*Id.*).

Defendant was also directed by the Probation Officer, per the form, that once employed she was to secure a land-line with no additional services such as caller ID, etc. "as need[ed] to comply with the EM condition imposed at sentencing." (*Id.*). Therein, Defendant by signature acknowledged that "[she understood] if [she] failed to secure employment within 60 days from [June 5, 2009], court action may be taken....[She had] read, [understood] and

had these terms explained to [her]. [S]he agree[d] to obey them. If [she did] not obey them, [she] c[ould] be returned to Court, detained, or have additional terms added." (*Id.*).

### 1. Allegation A-Violation of Standard Condition #1

As ordered by the Court: "You shall report to the Probation Office as directed by the court or probation officer, and shall submit a truthful and complete written report within the first five days of each month." (Pet., Alleg. A at p. 2). The factual underpinnings are that:

> On or about April 27; July 13, 20 and 27; and August 10, 2009, [Defendant] failed to report to the probation office as directed by the probation officer.

(*Id.*).[2]

Defendant's failure to report on April 27, 2009, which is prior to Defendant signing the Implementation Of Terms Of Supervision on June 5, 2009, is based upon Defendant having been called on April 27, 2009 at 2:11 p.m. by the Probation Officer and directed to come to the Probation Office. (Verdugo, at pp. 9, 16). Defendant's explanation to the Probation Officer for not coming in was that she had called the Probation Officer but that the Probation Officer did not pick up the phone. (*Id.*). Defendant agrees that she did not report to the Probation Office on April 27, 2009 but does not remember speaking with the Probation Officer at any time about coming to the Probation Office in April of 2009. (Araiza, at pp.49-50, 62).

As to the July and August dates of 2009 wherein Defendant did not report to the Probation Officer: "...she just did not report." (Verdugo, at pp. 10, 18). Defendant admits that she failed to report for the July dates and, despite having a house phone, did not call the Probation Officer. (Araiza, at pp. 50-51, 62). The reason given by Defendant for failing to report was that her children were not in school at the time and it was difficult to take the bus with her four children during the summer heat. (*Id.* at p. 50). On Monday July 6, 2009 she was able to report to the Probation Officer because her cousin drove her and the children to

---

[2]The Court takes judicial notice that the dates alleged in the factual underpinning are Mondays. Fed.R.Evid. 201.

1 the Probation Office and took care of the children while she met with the Probation Officer.
2 (*Id.* at pp. 50-51). At any given time, Defendant did not know in advance whether her cousin
3 would be available to drive her to the Probation Office. (*Id.* at p. 52).

Defendant admits that she failed to report on August 10, 2009. (*Id.* at pp. 53, 62). The reason for not reporting to the Probation Officer in August is the same as that for not reporting in July. (*Id.*). Moreover, Defendant has a two-year old special-needs child who needs treatment for his chronic lung disease every three hours, making her ability to comply with her reporting requirements that much more difficult. (*Id.*).

### 2. Allegation B-Violation of Standard Condition #4

As ordered by the Court: "You shall answer all inquiries by the probation officer and follow the instructions of the probation officer." (Pet., Alleg. B at p. 2). The factual underpinnings are that:

> [Defendant] failed to participate in a verified job search on July 13 and 20; [sic] and 27, 2009, as directed and implemented in writing on June 5, 2009."

(*Id.*).

The same dates in July 2009 that Defendant failed to report to the Probation Office as alleged in Allegation A, are also the same dates that Defendant is alleged to have failed to participate in verified job searches. The Government posits that Defendant was directed on June 5, 2009 via the Implementation Of Terms Of Supervision to participate in verifiable job searches. (Verdugo, at p. 10). The Probation Officer, when asked: "And what - - did she give any response when you asked her as to why she didn't provide any proof that she had been participating in job searches?", responded "I don't believe so." (*Id.*). Defendant states that in July 2009, while tending to her special-needs child, she also looked for work. (Araiza, at pp. 54-55). Defendant states that she was instructed to make 10 applications for work each week, that she submitted 40 to 50 job applications in July, but failed to submit verification on Mondays as required. (*Id.* at p. 56). Defendant states that she ultimately gave verification of job searches to the Probation Officer in July, of the job applications she had made for July. (*Id.*).

1 | Defendant through counsel queried the Probation Officer that the June 5, 2009
2 | Implementation Of Terms Of Supervision, wherein she was to participate in verifiable job
3 | searches, were additional and more onerous conditions necessitating a hearing before her
4 | conditions could be modified. (Verdugo, at p. 19). Further, requiring Defendant to report
5 | every Monday and submit a list of applications are additional conditions imposing on
6 | Defendant's time. (*Id.* at p. 20). The Probation Officer posits that such were simply a
7 | directive falling under the requirement that Defendant follow the instructions of the
8 | Probation Officer in order to verify that she was looking for work. (*Id.*).

### 3. Allegation C-Violation of Standard Condition #6

As ordered by the Court: "You shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons." (Pet., Alleg. C at p. 2). The factual underpinnings are that:

> [Defendant] has failed to work regularly at a lawful occupation during the months of April through August 2009.

(*Id.*).

The Government posits that Defendant's failure to work regularly during the months of April through August is evidenced by Defendant's failure to submit documentation regarding employment for those months. Defendant was required to submit a truthful and complete written report within the first five days of each month (Standard Condition #1) and "on her monthly report she indicated that she was not working." (Verdugo, at p. 11). From April to August, Defendant was not in school or in training. (*Id.*). The reason given by Defendant for not working in July was that she was looking for work. (*Id.*). As explained in I-B-2, *supra*, Defendant failed to participate in verifiable job searches for July 13, 20, and 27, 2009.

Defendant states that she did not work in April, May or June of 2009. (Araiza, at p. 64). The Court can only assume that if (a) Defendant indicated in her monthly reports for April, May, June and August to the Probation Officer that she was not working; and (b) no allegation has been made that Defendant failed to participate in verifiable job searches for

- 7 -

April, May, June and August; then (c) Defendant need not have been employed for those months because she was alternatively complying with Standard Condition #4. i.e., answered all inquiries by the probation officer and participated in verifiable job searches for those months. Defendant does state that in July she cleaned houses, was paid in cash, informed the Probation Officer of such, and was instructed by the Probation Officer to obtain letters from those people who employed her to clean, but she failed to do so. (Araiza, at pp. 57-58).

### 4. Allegation D-Violation of Standard Condition #7

As the Court ordered: "You shall notify the probation officer at least ten days prior to any change of residence or employment." (Pet., Alleg. D at p. 2). The factual underpinnings are that:

> On or about August 5, 2009, Araiza changed her residence without prior probation officer approval and failed to notify her probation officer at least ten days in advance.

(*Id.*).

The Government posits that Defendant, in effect complying with Standard Condition #1, i.e., submit a truthful and complete written report within the first five days of each month, advised the Probation Officer on Wednesday August 5, 2009 that she had moved the previous weekend. (Verdugo, at p. 12). The Probation Officer cannot recall if Defendant proffered a reason for failing to notify her at least 10 days in advance. (*Id.*). Defendant states that she had been residing with her cousin on Calle Milu when her boyfriend found an apartment for her and her children, requiring her to move in one day. (Araiza, at pp. 45, 58-59). Consistent with the Probation Officer's testimony, Defendant testified that she informed the Probation Officer five days later on August 5, 2009 when she made her monthly report. (*Id.* at p. 59). Defendant states she did not have a phone nor money for a phone call in order to call the Probation Officer within the required time period. (*Id.*).

### 5. Allegation E-Violation of Special Condition #2

As the Court ordered: "The defendant shall participate in the home confinement program for a period of six months that may be subject to electronic monitoring or not to [sic] subject to electronic monitoring at the discretion of the probation officer. And if there

1 is electronic monitoring, the defendant will not be required to pay for the electronic
2 monitoring. Home confinement shall commence according to a schedule arranged by the
3 home confinement specialist. The defendant shall comply with the provisions of the Home
4 Confinement Participant Program." (Pet., Alleg. E at p. 2). The factual underpinnings are
5 that:

> During the months of April through August 2009, Araiza has failed to participate in a home confinement program which includes electronic monitoring.

(*Id.*).

The Government posits Defendant was ordered subject to electronic monitoring when she was sentenced in the District of Nebraska on March 27, 2009. (Verdugo, at pp. 13-14). Defendant was made aware of this condition when she signed form 7A on April 2, 2009 soon after arriving from the District of Nebraska to the District of Arizona.(*Id.* at p. 14). It is the practice of the Probation Office, when a defendant has been ordered subject to electronic monitoring, to immediately put in place electronic monitoring. (*Id.*). Defendant initially advised the Probation Officer that she was late in paying her rent and was being evicted. (*Id.*; Araiza, at pp. 44-45). Defendant did not have a basic phone line and the Probation Office can only cover the actual monitoring device while the cost of the phone line is borne by the defendant. (*Id.* at pp. 14-15).

The Probation Officer gave Defendant approximately six months within which to obtain a land-line, i.e., from her sentencing on March 27, 2009 until September 11, 2009 when the instant Petition was filed. (*Id.* p. 15). In September of 2009, Defendant began the process of having a land-line installed where she is presently residing. (*Id.*). Defendant explained that her landlord has to install certain cables in the residence in order to accommodate installation of a phone land-line; she presently has no access to a phone therein; the phone company requires a $40.00 connection fee; and it would be for naught were she to pay such fee since the landlord has not installed the proper cables. (Araiza, at pp. 60-61).

Defendant through counsel queried the Probation Officer that in the original conditions of supervised release there was no condition that Defendant secure a land-line. (Verdugo, at

p. 21). The Probation Officer responded that in order to place someone under electronic monitoring, a land-line would necessarily be required. (*Id.*). Defendant through counsel queried the Probation Officer that requiring a land-line was not ordered to begin with and would require a hearing to modify her conditions of supervised release. (*Id.* at p. 22). The Probation Officer responded that it was not a change of Defendant's conditions of supervised release, but rather an implementation of conditions already ordered. (*Id.*).

The District of Nebraska ordered Defendant confined to her home by use of electronic monitoring at the discretion of the probation officer for a period of six months. (Gov., Exh. 1 at p. 4). Defendant through counsel posits that there is a distinction between the District of Nebraska's order that "[t]he defendant shall comply with the provisions of the Home Confinement Participant *Agreement*[]" *vis a vis* Allegation E of the Petition to Revoke Supervised Release wherein Defendant is alleged to have failed "to comply with the provisions of the Home Confinement Participant *Program.*" (Verdugo, at pp.30-32; *see* Gov., Exh. 1 at p. 4; Pet., at p. 2) (emphasis added). The District of Nebraska ordered that Defendant "shall participate in the home confinement program...subject to electronic monitoring at the discretion of the probation officer." (Gov., Exh. 1 at p. 4); on April 2, 2009 Defendant signed form 7A agreeing to "participate in a Home Confinement Program with electronic monitoring" (Gov., Exh. 2 at p. 2). The distinction sought to be drawn by Defendant is a distinction without merit. To find otherwise would elevate form over substance.

## II. CONCLUSION

Based upon the aforesaid, the Court FINDS by a preponderance of the evidence that:

1.  Defendant violated:

    A.  Standard Condition #1: "You shall report to the Probation Office as directed by the court or probation officer, and shall submit a truthful and complete written report within the first five days of each month."

Defendant failed to report to the Probation Office, as directed, on April 27, July 13, 20, 27, and August 10, 2009.

However, the Government has not proven by a preponderance of the evidence that Defendant failed to submit a truthful and complete written report within the first five days of April, May, June, July and August of 2009;

  B. Standard Condition #4: "You shall answer all inquiries by the probation officer and follow the instructions of the probation officer."

Defendant, by her own admission, failed to submit verification of job searches on July 13, 20, and 27 of 2009;

  C. Standard Condition #7: "You shall notify the probation officer at least ten days prior to any change of residence or employment."

Defendant, by her own admission, did not advise the Probation Officer ten days prior to her moving to the Gila Avenue address. This was due in no small part to her boyfriend having found the Gila Avenue apartment, which was more accommodating to Defendant's familial needs, on short notice to Defendant. Defendant's prior address changes were from a residence with her *mother* on Calle Bonita, from where she was evicted, to a residence with her *cousin* on Calle Milu. (Verdugo, at p. 35). There is no evidence that such residence changes were done without the Probation Officer's approval. In mitigation, Defendant did comply with Standard Condition #1 in informing the Probation Officer within the first five days of August 2009 that she had moved to the Gila Avenue apartment; and

  D. Special Condition #2: "The defendant shall participate in the home confinement program for a period of six months that may be subject to electronic monitoring or not subject to electronic monitoring at the discretion of the probation officer. And if there is electronic monitoring, the defendant will not be required to pay for the electronic monitoring. Home confinement shall commence according to a schedule arranged by the home confinement specialist. The defendant shall comply with the provisions of the Home Confinement Participant Program."

Defendant has failed to participate in a home confinement program. This program requires a land-line in order to utilize an electronic monitoring device. The Probation Office absorbs the cost of the device, not the cost for obtaining the land-line. In mitigation,

1 Defendant has not participated in the program because of: (1) unstable, if not transient, living arrangements; (2) lack of gainful and lawful employment to give Defendant the wherewithal to stabilize her living arrangement, including the caretaking of her children and the installation of a land-line for the electronic monitoring device; and (3) the landlord of her present residence has yet to install the cables necessary for installation of a land-line.

    2. Defendant did not violate:

        A. Standard Condition #6: "You shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons."

Defendant, in complying with Standard Condition #1, that she submit a truthful and complete written report within the first five days of each month, informed the Probation Officer that she was not working for the months of April, May, June and August of 2009. There is no evidence before the Court that Defendant did not submit verifiable job search information for April, May, June and August of 2009. There is as well, no evidence before the Court that Defendant failed to submit a truthful and complete written report that she was not working, by Monday July 6, 2009. If Defendant is not working, she must submit verifiable job search information. If Defendant does not submit verifiable job search information, she must work. Defendant's only failing is that she did not submit verifiable job search information for July 13, 20, and 27 2009 (Allegation B). The Court finds that Defendant did not fail to work for the months of April, May, June, July and August of 2009.

## III. RECOMMENDATION

Upon review of the entire record in this matter, the Magistrate Judge recommends that the District Court find by a preponderance of the evidence that Defendant: *did* violate Standard Condition #1 (Allegation A) to the extent that Defendant did not report to the Probation Office on April 27, July 13, 20, 27, and August 10, 2009, but *did not* violate Standard Condition #1 to the extent that the Government has not proven that Defendant failed to submit truthful and complete written reports within the first five days of April, May June, July and August of 2009; *did* violate Standard Condition #4 (Allegation B); *did not*

| 1 | violate Standard Condition #6 (Allegation C); *did* violate Standard Condition #7 (Allegation |
| 2 | D); and *did* violate Special Condition #2 (Allegation E). |
| 3 | Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal |
| 4 | Procedure, any party may serve and file written objections within fourteen days after being |
| 5 | served with a copy of this Report and Recommendation. If objections are filed, the parties |
| 6 | should use the following case number: **CR 09-50073-TUC-JMR**. |
| 7 | Failure to file objections in accordance with Fed.R.Crim.P. 59 will result in waiver of |
| 8 | the right to review. |
| 9 | DATED this 23rd day of December, 2009. |

*[Signature]*
Héctor C. Estrada
United States Magistrate Judge